No. 86,255

In the Matter of GEORGE F. FARRELL, JR., *Respondent*.

(21 P.3d 552)

Opinion filed April 20, 2001.

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was on the formal complaint for petitioner.

*John J. Ambrosio*, of Topeka, argued the cause, and *George F. Farrell, Jr.*, respondent, appeared pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, George F. Farrell, Jr., an attorney admitted to the practice of law in Kansas, whose last known business address is Topeka, Kansas.

The hearing panel concluded that Farrell violated Kansas Rules of Professional Conduct (KRPC) 1.3 (2000 Kan. Ct. R. Annot. 310) (failing to act with reasonable diligence and promptness in representing a client); KRPC 1.4 (2000 Kan. Ct. R. Annot. 320) (failing to keep a client reasonably informed about the status of a matter and promptly complying with reasonable requests for information); KRPC 1.15(a) (2000 Kan. Ct. R. Annot. 360) (failing to hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property); KRPC 1.15(b) (2000 Kan. Ct. R. Annot. 360) (failing to promptly notify client or third person upon receipt of funds in which client or third person has an interest); KRPC 8.4(a) (2000 Kan. Ct. R. Annot. 420) (violating or attempting to violate the rules of professional conduct); KRPC 8.4(b) (2000 Kan. Ct. R. Annot. 420) (committing a criminal act that reflects adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects); KRPC 8.4(c) (2000 Kan. Ct. R. Annot. 420) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and KRPC 8.4(g) (2000 Kan. Ct. R. Annot. 420) (engaging in any other conduct that adversely reflects on the lawyer's fitness to practice law). The panel recommended disbarment.

Farrell stipulated to the following facts and admitted that the facts detailed in the stipulation and the formal complaints are true. He also admitted that the conduct violated the specific sections of the KRPC as set forth in the stipulation and formal complaints filed against him.

## I. ALLSTATE CHECK

Farrell was sent a check by Allstate Insurance Company to satisfy a judgment in an underinsured motorist claim. The judgment was in Shawnee County District Court, No. 97-CV-1285. The check was made payable to the "Clerk of the Shawnee County Dist Court" in the amount of $25,000. The check was issued April 8, 1999.

On Friday, April 16, 1999, Farrell drove to a drive-through facility at Silver Lake Bank in Topeka. At that time, Farrell presented the bank teller, Trisha Fazio, with the $25,000 check from Allstate Insurance and a deposit slip for his personal account. Farrell attempted to deposit $24,900 into his personal account and obtain $100 cash.

Fazio examined the check, saw that it was made payable to the "Clerk of the Shawnee County Dist Court," and also saw that the check was endorsed with two different colors of ink. The check was endorsed with the words "Clerk of the Shawnee County District Court" on the top and second endorsement line and with Farrell's name on the third endorsement line on the back of the check.

Fazio took the check to her supervisor, who called the Clerk of the Shawnee County District Court. The clerk asked the bank to refrain from cashing the check and to retain possession of the check.

Farrell endorsed the check with both "Clerk of the Shawnee County District Court" and his name, but did not have permission from the clerk to endorse or negotiate the check.

On May 10, 1999, Farrell provided a written response to the initial complaint. He asserted in part:

"On April 16th, I generally recall that I was working in my office, and that I had two or three checks on my desk all of which were face down. On[e] of the checks

was from A.T. & T. in the amount of $50.00. I was planning on cashing that check simply to have some money for the weekend. I then endorsed what I thought was the A.T.&T. check and was planning on cashing it at Silver Lake Bank, which I would [be] going by on my way to a luncheon meeting.

"While I was on my way to the bank, I looked at the check and realized for the first time, that the check which I had endorsed was not the A.T.& T. check, but instead the check from Allstate which was made payable to the Clerk of the District Court.

"The check was to satisfy the judgment in 97-CV-1285.

"Since I felt my relationship with the new claims manager at Allstate was tenuous at that time, I did not want to call him and tell him that I had mistakenly endorsed the Allstate check and request that another check be issued in it's [*sic*] place;

"As a result, my intent was to deposit the Allstate Check in my account at Silver Lake Bank, and then on Monday, April 19th, to write a personal check out of my account payable to the Clerk of the Court and deposit that check with the Clerk to satisfy the judgment.

"On the way to the bank, after realizing that I had endorsed the wrong check, I filled out a deposit slip and wrote 'Clerk of the District Court' on the back of the Allstate check."

At the disciplinary hearing, Farrell admitted that the explanation contained in the written response to the initial complaint was false.

## II. TANTILLO COMPLAINT

On October 18, 1995, Larry D. Barnes and Richard L. Barnes filed suit in Shawnee County District Court, No. 95-CV-1124, against Charles R. Tantillo for breach of contract and anticipatory breach of contract. The plaintiffs sought in excess of $2,000,000.

Tantillo retained Farrell to represent him in the action filed by the Barneses. On January 27, 1997, the plaintiffs filed a motion for summary judgment. Farrell failed to inform Tantillo that the plaintiffs had filed the motion.

On February 13, 1997, Farrell filed a motion for extension of time in which to respond to the motion for summary judgment. Farrell's motion was granted. Farrell failed to file a response.

On April 20, 1997, the court granted the plaintiffs' motion and awarded the plaintiffs $2,271,724.51, plus costs and interest. Farrell made no attempt to have the order of summary judgment set aside.

On May 30, 1997, Farrell filed a notice of appeal with the Kansas Court of Appeals. Farrell sought to overturn the order of summary judgment.

Tantillo subsequently hired new counsel. On August 1, 1997, Gregory Musil and William E. Quirk, Tantillo's new attorneys, filed a motion for relief from judgment pursuant to K.S.A. 60-260(b). In that motion, counsel stated that Farrell had failed to inform Tantillo that a motion for summary judgment had been filed or that he failed to respond to the motion. The motion for relief from judgment included an affidavit signed by Farrell agreeing to the statements of counsel.

Tantillo did not learn of the judgment entered against him until the plaintiffs sought to enforce the judgment. Counsel for Tantillo were unsuccessful in their attempt to have the judgment set aside. Tantillo died unexpectedly and payment of the judgment was resolved in the probate proceeding.

### III. UMSCHEID COMPLAINT

On June 1, 1998, Farrell, as counsel for Columbia Insurance Group, contacted Kristy L. Umscheid by letter. The purpose of the correspondence was for Farrell to introduce himself and request that Umscheid contact him regarding a settlement of a claim of Umscheid's daughter by a friendly suit to be filed in Riley County, Kansas.

On June 4, 1998, Columbia Insurance Group issued two checks which were forwarded to Farrell. Check No. 9261989 in the amount of $10,000 was made payable to "Kristy L. Umscheid & Russell J. Umscheid as Parents & Guardians of Macy Umscheid." Check No. 9262003 in the amount of $4,450.51 was made payable to "Kristy L. Umscheid & Russell J. Umscheid as Parents & Guardians of Macy Umscheid & Farm Bureau Mutual Insurance Company."

After Kristy Umscheid contacted Farrell, he forwarded a petition to her to sign. Umscheid signed the petition and returned it to Farrell. Thereafter, Farrell took no action on the case for an extended period of time.

Farrell endorsed check No. 9261989 as follows: "Kristy L. Umscheid & Russell J. Umscheid as parents and guardians of Macy Umscheid." Additionally, Farrell endorsed his own name. On October 7, 1998, check No. 9261989 was negotiated at the Community National Bank.

On February 15, 1999, Kristy Umscheid contacted Farrell because she had not heard from him for months. During the telephone conversation, Farrell told Umscheid that she needed to sign additional papers. Farrell informed Umscheid that after she signed the papers, he would file them and meet with the judge to set a date for the hearing. Farrell explained that he thought the hearing would be set in 2 or 3 weeks.

Farrell endorsed check No. 9262003 in the names of Kristy Umscheid, Russell Umscheid, Farm Bureau Mutual Insurance, and George F. Farrell, Jr. On March 2, 1999, Farrell presented check No. 9262003 for deposit into his personal checking account. The bank deposited the proceeds from check No. 9262003 into Farrell's personal account. Farrell used the funds to meet personal obligations.

In March 1999, Farrell sent Kristy Umscheid a journal entry of judgment for her signature. Umscheid requested that Ed Pugh, an attorney in Wamego, Kansas, review the journal entry. After Pugh reviewed and approved the journal entry, Umscheid signed and returned the journal entry to Farrell.

In April 1999, Farrell informed Umscheid that he had received the signed journal entry from her and that he would be filing the case the following week.

Thereafter, Farrell failed to contact Umscheid. Because she had not heard from Farrell, Umscheid contacted Farrell by telephone on August 3, 1999, and asked about the hearing date. Farrell assured Umscheid that he would obtain a hearing date in the coming days.

On August 16, 1999, Umscheid called Farrell again. At that time, Farrell told Umscheid that the hearing was tentatively scheduled for September 7, 1999, at 10 a.m.

On September 8, 1999 (15 months after initially contacting Umscheid), Farrell filed a petition in the Riley County District Court,

No. 99-C-171. That case was a friendly suit filed to settle the claim of Macy Umscheid. Kristy Umscheid signed the petition months before it was filed. On September 21, 1999, Farrell filed an answer to Umscheid's petition.

Farrell subsequently telephoned Umscheid and informed her that the hearing had been rescheduled for September 21, 1999, at 10:45 a.m.

On September 21, 1999, Umscheid attended the hearing. At that time, Farrell told Umscheid that he did not have the checks with him because the original checks from the company were void because of the amount of time that had passed since they were issued. Farrell agreed to contact the insurance company and have them issue new checks. Farrell assured Umscheid that she would have the checks within 1 week. Farrell had deposited the checks, however, into his accounts in October 1998 and March 1999.

Because she had not received the checks, Umscheid contacted Farrell on October 29, 1999. Farrell assured her that he would take care of the matter and that she would receive the checks by November 3, 1999.

On November 9, 1999, Umscheid called Farrell again and informed him that the checks had not arrived. Farrell told Umscheid that the checks had been lost in the mail; that he would try to find them; and that they should be to her by November 12, 1999, but no later than November 15, 1999.

When the checks did not arrive by November 15, 1999, Umscheid called Crawford & Company and talked with Robert Curie. Curie had settled the case for Columbia Insurance Group. That same day, Umscheid called Alan Buchanan of Farm Bureau Mutual Insurance Company and explained the situation.

Buchanan called Farrell and questioned him about the settlement. Farrell assured Buchanan that the checks would be there in a couple of days.

On November 18, 1999, Farrell left a message on Umscheid's voice mail stating that he had mailed the checks that morning on his way to work. The checks did not arrive.

Umscheid called Farrell again on November 22, 1999. Farrell asserted that the checks must have been lost in the mail and that

he would issue new checks and mail them with a satisfaction of judgment to be signed and returned. Umscheid volunteered to travel to Topeka to pick up the checks. Farrell informed Umscheids that it would not be necessary to come to Topeka as he had just put the checks in the mail.

When the checks did not arrive by November 30, 1999, Umscheid called Farrell. Farrell agreed to meet Umscheid on December 6, 1999, at the Riley County Courthouse. Umscheid met Farrell at the courthouse and Farrell gave Umscheid two checks drawn on the George F. Farrell Trust Account at the Community National Bank, each in the amount of $5,000. The checks were numbered 146 and 148 and dated December 5, 1999. Farrell told Umscheid that the checks could be deposited the following day. Farrell indicated that he needed to call the bank and tell them it was proper to pay these checks because he had put a stop payment on the other "lost" checks.

Umscheid showed the checks to Buchanan. Umscheid and Buchanan called the bank to see if funds were available in Farrell's trust account. Funds were not available to pay the checks at that time. In fact, Farrell only had $23.54 in his trust account.

On December 7, 1999, Umscheid called Farrell's bank and was informed that sufficient funds were in the account to cover the checks. Umscheid subsequently cashed the checks.

As of the date of the complaint, December 13, 1999, Farrell had not reimbursed Farm Bureau Insurance Company in the amount of $4,450.51, which represented its personal injury protection (PIP) lien in the case. Farrell, through his previous counsel, states that he has now reimbursed Farm Bureau Insurance Company.

Between June 1998 and December 1999, Farrell endorsed two checks (Nos. 9262003 and 9261989) totaling $14,450.51, without authority from the payees, and converted the money to his own use, which belonged to Umscheid's minor daughter and Farm Bureau Insurance Company.

Farrell did not have the permission of Kristy Umscheid or Farm Bureau Mutual Insurance Company to endorse the checks and deposit the proceeds into his accounts.

Based on the foregoing stipulated facts, the hearing panel made the following conclusions of law:

"1. Based upon the above findings of fact, the Hearing Panel concludes, as a matter of law, that the Respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.15(a), KRPC 1.15(b), KRPC 8.4(a), KRPC 8.4(b), KRPC 8.4(c), and KRPC 8.4(g), as detailed below.

"2. The Hearing Panel concludes that the Respondent violated KRPC 1.3. Attorneys must act with reasonable diligence and promptness in representing their clients. The Respondent failed to act with reasonable diligence and promptness in representing Mr. Tantillo, by failing to respond to the plaintiff's motion for summary judgment and by failing to attempt to have the judgment set aside. The Respondent also failed to act with reasonable diligence and promptness in representing his client in DA7577, by failing to timely file the petition and by failing to timely disburse the settlement monies.

"3. The Hearing Panel concludes that the Respondent violated KRPC 1.4(a). KRPC 1.4(a) provides:

'A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.'

The Respondent failed to maintain adequate communication with Mr. Tantillo, by failing to inform Mr. Tantillo that a motion for summary judgment had been filed. Additionally, the Respondent violated KRPC 1.4(a), when he failed to inform Mr. Tantillo that judgment had been granted. The Respondent stipulated that he violated KRPC 1.4(a) with regarding to DA7757. While the record is void as to communication with his client (The Columbia Insurance Group), the Respondent certainly failed to keep the Umscheids reasonably informed regarding the status of the friendly suit.

"4. The Respondent violated KRPC 1.15(a) and KRPC 1.15(b). Those subsections provide as follows:

'(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

'(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

a. With regard to the DA7539, the Respondent attempted to violate KRPC 1.15(a). In that case, the Respondent attempted to deposit funds of a third person into his personal account. But for the actions of the bank teller, the Respondent would have completed the violation of KRPC 1.15(a).

b. In DA 7757, the Respondent violated KRPC 1.15(a) and KRPC 1.15(b). The Respondent violated KRPC 1.15(a) when he deposited the proceeds from check numbered 9262003 into his personal account. The Respondent violated KRPC 1.15(a) when he failed to keep the funds from checks numbered 9262003 and 9261989 in a separate account and used the proceeds for his personal expenses. The Respondent violated KRPC 1.15(b) when he failed to promptly deliver to the Umscheids and Farm Bureau Mutual Insurance Company the checks. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.15(a) and KRPC 1.15(b).

"5. KRPC 8.4 provides, in pertinent part, as follows:

'It is professional misconduct for a lawyer to:

'(a) Violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;

'(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

'(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

. . . .

'(g) engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.'

"6. Because the Respondent attempted to violate KRPC 1.15(a), and because the Respondent did violate KRPC 1.3, KRPC 1.4, and KRPC 1.15, the Hearing Panel concludes that the Respondent 'violated or attempted to violate the rules of professional conduct,' in violation of KRPC 8.4(a).

"7. Because the Respondent committed crimes that reflect adversely on his honesty and trustworthiness, the Hearing Panel concludes that the Respondent violated KRPC 8.4(b). In committing the misconduct in this case, the Respondent violated two criminal statutes.

a. K.S.A. 21-3710 provides, in pertinent part, as follows:

'(a) Forgery is knowingly and with intent to defraud:

'(1)Making, altering or endorsing any written instrument in such manner that it purports to have been made, altered or endorsed by another person, either real or fictitious, and if a real person without the authority of such person; . . . .'

The Respondent committed the offense of forgery, according to K.S.A. 21-3710(a)(1), when he signed 'Clerk of Shawnee County District Court' on the back of the check in DA7539. The Respondent also committed forgery, in violation of K.S.A. 21-3710(a)(1), in DA7757, when he signed the names of the Umscheids and Farm Bureau Mutual Insurance Company on the checks. Forgery is a level 8, nonperson felony.

'b. In addition to committing the crime of forgery, the Respondent also committed the crime of criminal deprivation of property. That crime is committed when a person:

'. . . obtain[s] or exert[s] unauthorized control over property, with intent to deprive the owner of the temporary use thereof, without the owner's consent but not with the intent of depriving the owner permanently of the possession, use or benefit of such owner's property.'

K.S.A. 21-3705(a). In this case, the Respondent violated K.S.A. 21-3705(a), when he temporarily deprived the Umscheids and Farm Bureau Mutual Insurance Company of their property. Criminal deprivation of property is a class A, non-person misdemeanor.

"8. The Respondent 'engage[d] in conduct involving dishonesty, fraud, deceit or misrepresentation' in DA7539 and DA 7757, in violation of KRPC 8.4(c).

a. In DA7539, the Respondent violated KRPC 8.4(c) when he signed 'Clerk of Shawnee County District Court' on the back of the check, when he attempted to deposit that check into his personal checking account, and when he provided a written response to the initial complaint that contained false statements.

b. In DA7757, the Respondent acted dishonestly when he signed the names of others on the backs of the checks, when he deposited the funds into his accounts, and when he spent the proceeds of the checks. Additionally, the Respondent acted dishonestly when he led Mrs. Umscheid to believe that the checks were void because of their age, when the Respondent had already cashed the checks and converted the property.

"9. A lawyer's most basic professional obligation is to maintain personal honesty and integrity. Without those attributes, a lawyer is not fit to practice law. The Hearing Panel concludes that, because the Respondent forged negotiable instruments (DA7539 and DA7757), converted property to his personal use (DA7757), and provided false information to the disciplinary authorities (DA7539), the Respondent engaged in conduct that adversely reflects on his fitness to practice law, in violation of KRPC 8.4(g)."

## The hearing panel thereafter made the following recommendation:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duties to his client to provide diligent and competent representation and to maintain adequate communication. The Respondent violated his duty to maintain personal integrity.

"*Mental State.* The Respondent intentionally violated his duties.

"*Injury.* While it is impossible to know whether Mr. Tantillo would have prevailed on the merits had the Respondent defended Mr. Tantillo in relation to the motion for summary judgment, Mr. Tantillo certainly lost his ability to challenge

that motion. The judgment was a liability of Mr. Tantillo's estate. Certainly, Mr. Umscheid, Mrs. Umscheid, and their daughter suffered financial loss as a result of the Respondent's misconduct. The Umscheids were deprived of $10,000 for approximately 18 months. Also, Farm Bureau Mutual Insurance Company also suffered financial injury. The Respondent withheld the $4,450.51 from Farm Bureau Mutual Company for approximately 18 months. Finally, the legal profession was injured by the Respondent's lack of personal integrity. The injury to the legal profession, when an attorney provides false information, converts property of third persons, and forges others' names on negotiable instruments, is impossible to quantify.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel found the following aggravating factors present in this case. Accordingly, the Hearing Panel considered these factors in formulating the recommended discipline.

"*Prior Disciplinary Offenses.* The Respondent has twice previously received informal admonitions. On May 29, 1990, the Disciplinary Administrator's office informally admonished the Respondent for having violated [KRPC] 1.1, 1.3, 1.4, 8.4, and his oath of office. On November 2, 1995, a Hearing Panel recommended that the Respondent be informally admonished for having violated [KRPC] 1.2(a) and 1.4(a).

"*Dishonest or Selfish Motive.* In this case, the Respondent forged the names of third persons and converted their property. Those actions necessarily involve dishonesty and selfishness.

"*Pattern of Misconduct.* The Respondent repeatedly forged the names of others in an attempt to convert or to actually convert the property of another.

"*Multiple Offenses.* The Respondent violated KRPC 1.3, 1.4, 1.15, and KRPC 8.4. As such, the Respondent committed multiple offenses.

"*Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with the Rules or Orders of the Disciplinary Process.* The Respondent submitted a written response to the initial complaint that contained falsehoods. Accordingly, the Respondent engaged in a bad faith obstruction of the disciplinary proceeding.

"*Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process.* The submission of a false written response to the initial complaint in DA7539 provides evidence that the Respondent engaged in deceptive practices during the disciplinary process.

"*Vulnerability of Victim.* The Umscheids (DA7757) were particularly vulnerable.

"*Substantial Experience in the Practice of Law.* The Respondent was admitted to the practice of law in the state of Kansas in 1973. The Respondent has actively practiced law for 27 years.

"*Illegal Conduct.* By forging the names of others on negotiable instruments, the Respondent engaged in illegal conduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel found the following mitigating circumstances present in this case. Accordingly, the Hearing Panel considered these circumstances in formulating the recommended discipline.

"*Personal or Emotional Problems if Such Misfortunes Have Contributed to the Violations.* At the time the Respondent committed the misconduct, he was under extreme financial pressure. [The Respondent's financial pressure arose because, after having failed to pay past due federal employment taxes, the Internal Revenue Service undertook collection through garnishment and attachment. So, while the Hearing Panel recognizes that the Respondent was financially stressed, the underlying cause of the stress was brought on by the Respondent's mismanagement of his business affairs and is not a factor in mitigation.]

"*Previous Good Character and Reputation.* The Respondent is an active and productive member of the bar in Topeka, Kansas. He enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the Hearing Panel.

"*Remoteness of Prior Offenses.* The facts underlying the previous discipline imposed against the Respondent occurred in 1988 and 1994.

. . . .

"In this case, while the Respondent's conduct amounted to 'criminal acts directly involved with the practice of law' and 'involved felonious conduct interfering with the administration of justice, false swearing, misrepresentation, fraud, and acts adversely reflecting on the lawyer's fitness to practice law,' the Respondent's actions were *not* directed toward the wishes of his clients. The Respondent acted out of selfishness when he forged the checks and converted the proceeds.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 5.11(a). That standard provides, in pertinent part:

'Disbarment is generally appropriate when a lawyer engages in serious criminal conduct, a necessary element of which includes intentional . . . misrepresentation, fraud, extortion, misappropriation, or theft . . . .'

"The Hearing Panel is convinced that the Respondent has provided quality services to his clients during his long legal career. Additionally, the Hearing Panel is cognizant of the Respondent's good character and reputation in the Topeka legal community. However, the Hearing Panel cannot ignore the serious nature of the misconduct. Additionally, while mitigating factors are present in this case, they are not of such significance to warrant a departure from the discipline normally imposed in cases similar to this case.

"Based upon the findings of facts, the conclusions of law, and Standard 5.11(a), the Hearing Panel unanimously recommends that Respondent be disbarred."

The ultimate goal of disciplinary proceedings is to protect the public. See *In re Jones,* 252 Kan. 236, 239, 843 P.2d 709 (1992).

Additionally, the disciplinary proceedings give the public confidence that attorneys who violate the KRPC are disciplined in a manner which is appropriate, given the specific circumstances of the case. *In re Bailey,* 268 Kan. 63, 65, 986 P.2d 1077 (1999).

In determining the appropriate discipline to be imposed for violating the disciplinary rules, we consider the facts surrounding the violation as well as any aggravating or mitigating circumstances. *State v. Stakes,* 227 Kan. 711, 720, 608 P.2d 997 (1980).

There is clear and convincing evidence that the respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.15(a), KRPC 1.15(b), KRPC 8.4(a), KRPC 8.4(b), KRPC 8.4(c), and KRPC 8.4(g).

A majority of the court holds that the discipline imposed should be disbarment.

IT IS THEREFORE ORDERED that imposition of discipline against George F. Farrell, Jr., be disbarment commencing on this date for his violations of the disciplinary rules of the Supreme Court.

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of George F. Farrell, Jr., from the role of attorneys licensed to practice law in the state of Kansas and that Farrell forthwith shall comply with Supreme Court Rule 218 (2000 Kan. Ct. R. Annot. 266).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs of the proceeding be assessed to Farrell.