No. 83,058

In the matter of JOHN W. COLE, *Respondent*.

(991 P.2d 422)

Opinion filed November 5, 1999.

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for the petitioner.

*John W. Cole*, respondent, appeared pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against John W. Cole, of Ottawa, an attorney admitted to the practice of law in Kansas. The complaint against respondent alleges violations of KRPC 1.2 (1998 Kan. Ct. R. Annot 285) (scope of representation); KRPC 1.3 (1998 Kan. Ct. R. Annot. 288) (diligence); KRPC 1.4 (1998 Kan. Ct. R. Annot. 296) (communication); KRPC 3.2 (1998 Kan. Ct. R. Annot. 351) (expediting litigation); KRPC 8.4 (1998 Kan. Ct. R. Annot. 386) (misconduct); Supreme Court Rule 207 (1998 Kan. Ct. R. Annot. 222) (duties of the bar and judiciary).

A formal hearing before a panel of the Kansas Board for Discipline of Attorneys was held on December 17, 1998. The Disciplinary Administrator appeared by and through Frank D. Diehl, Deputy Disciplinary Administrator. Respondent appeared in person. There were no other appearances. Neither party objected to the panel as constituted, notice of the time and place of hearing, or the panel's jurisdiction of this matter.

Respondent did not file an answer to the complaint, in violation of Supreme Court Rule 211 (1998 Kan. Ct. R. Annot. 233). Three witnesses, including respondent, testified at the hearing.

At the close of the evidence, the panel left the record open until December 31, 1998, for respondent to provide pertinent documents referenced in his testimony concerning the subject matter of the formal hearing. Thereafter, the panel left the record open

for both parties to file additional comments concerning factors in aggravation and mitigation and any recommendation for discipline until January 15, 1999. Respondent provided no additional documentation to the panel and failed to respond by January 15, 1999.

Based upon clear and convincing evidence, a unanimous panel made the following findings of fact and conclusions of law. The panel also entered its findings concerning aggravating circumstances and mitigating circumstances with the recommendation that respondent be suspended for a period of one year and until such time as he may satisfy the Disciplinary Administrator with regard to his understanding and appreciation of the Kansas Rules of Professional Conduct.

## "FINDING OF FACT

"2. Jay Vander Velde was assigned to investigate the written complaint of James Randall against Respondent. Mr. Randall complained that Respondent failed to return Mr. Randall's calls and answer his requests for information about the claims concerning his late mother, Lela Mae Barnes, against the doctors, hospitals and nursing home who treated her. Respondent caused Mr. Randall to be appointed administrator of his late mother's estate. Lela Mae Barnes died while hospitalized after hip surgery at the Olathe Medical Center in Johnson County. The surgeon at the Olathe Medical Center initially began to operate on the wrong hip because the X-ray sent from the Ottawa hospital was incorrectly labeled. After realizing his mistake, the surgeon repaired the correct hip. Ms. Barnes was approximately 90 years old at the time of the surgery. She died intestate in the hospital about one week after the surgery. Her estate consisted mainly of the possible claims her estate and heirs had against the doctors, hospital and nursing home.

"3. Respondent opened the estate of Mrs. Barnes and it was decided that Mr. Randall, her son, would be administrator, since Mr. Barnes, the decedent's husband, was quite elderly. Respondent wrote to the doctors, the hospitals and the nursing home regarding wrongful death and personal injury actions. He received no response from any of them. The Barnes' wrongful death file was opened by Respondent's wife who was practicing with him at the time. She later left for salaried employment, and he continued the case. Mr. Randall testified that Mrs. Cole communicated often and well with him about the case, but after she left in late 1995, it was difficult to communicate with Respondent or get information about the case. Mr. Randall's complaint was mailed to the Disciplinary Administrator's office in December 1997. In 1998, Respondent eventually told Mr. Randall he thought the case might settle, but no settlement offers ever materialized.

"4. Respondent failed to cooperate with the Disciplinary Administrator's office or/and its investigators throughout the investigation. Both the Disciplinary Ad-

ministrator's office and Investigator Vander Velde wrote Respondent in December 1997. Respondent did not answer either inquiry. Mr. Vander Velde wrote again to Respondent on January 28, 1998, asking for his explanation of the situation. Respondent promised to reply in writing, but never did so. Respondent testified he did not respond to the Disciplinary Administrator's office or to Investigator Vander Velde because he thought the only action needed was to get in touch with Mr. Randall, the complainant, in spite of having received notices to the contrary.

"5. Respondent testified he had no written fee agreement with Mr. Randall or Mr. Barnes, but he expected to receive a percentage of any amount recovered in the wrongful death action.

"6. Respondent stated he does mainly criminal defense work and he tried to find another attorney to take the wrongful death suit. The age of Mrs. Barnes, which negatively impacted potential damages, made it difficult to prosecute the claims, according to Respondent.

"7. Respondent testified under oath that civil actions were filed in both Franklin County and Johnson County. Since an earlier investigation by the Disciplinary Administrator had revealed no such filings, the panel order Respondent to submit certified copies of all Johnson and Franklin County pleadings not later than December 31, 1998. The panel's review of Respondent's activities on behalf of his clients was severely restricted by Respondent's failure to bring any file materials to the hearing.

"8. Respondent also testified that a medical malpractice screening panel was requested in Johnson County. According to Respondent, the screening panel request was dismissed because 'the lawsuit had been filed.' In fact, the screening panel request was dismissed for lack of prosecution by Respondent. Further, the request for screening panel, filed on the eve of the running of the statute of limitation in August, 1996, stated 'A claim for personal injury or death has not yet been formalized by the filing of a petition.

"9. Respondent failed to furnish to the panel the earlier described documents by the December 31, 1998, deadline. The panel indirectly learned that Respondent contacted the Disciplinary Administrator on or about December 31, 1998, requesting an additional ten days in which to comply. Since Respondent failed to seek such extension from the panel, the same was not granted. Chairman Emerson made telephone requests for certified copies of court filings on two occasions following said deadline, which requests were ignored by Respondent. In any event, the requested documents were never provided by Respondent, all in direct violation of the panel's direction.

"10. Following the hearing, the Disciplinary Administrator discovered certain records of the District Court of Johnson County, Kansas, copies of which were furnished to the panel . . . Specifically, the records indicate that Respondent filed a request for a medical malpractice screening panel in August, 1996; that the request was dismissed as to one physician on May 30, 1997, for want of

prosecution by Respondent; and that the request was dismissed as to all health care providers on August 22, 1997, again for want of prosecution by Respondent.

"11. Before issuing this final report, the panel directed the Disciplinary Administrator to once again search the records of the Johnson and Franklin County District Courts for any filings by Respondent in the subject matters. The second search confirmed that an action was, in fact, filed in Franklin County on August 16, 1996 and in Johnson County on August 22, 1997. The Franklin County action was dismissed without prejudice with Respondent's agreement, on April 8, 1997, and the Johnson County action was dismissed without prejudice for want of prosecution on March 13, 1998.

"12. Following the dismissals of the screening panel proceeding and the two civil actions it appears that Respondent has done nothing. The applicable statutes of limitation have now run and the personal injury and wrongful death claims are forever barred, all due to Respondent's failure to take appropriate legal action."

## "CONCLUSION OF PANEL

"The panel unanimously finds that Respondent has violated Supreme Court Rules 207 and 211 and the Kansas Rules of Professional Conduct (KRPC 1.1, 1.3, 1.4, 1.5(c), and 8.4 as discussed below. The panel finds no violation of KRPC 1.2.

"SCR 207 [Supreme Court Rule 207]—Respondent failed to respond to the notice of complaint letter directed to him on December 11, 1997 which requested a written response within ten days. Further, he ignored the request of the investigating attorney, Jay W. Vander Velde, dated December 23, 1997 and a second request of January 28, 1998. Further, after appearing at the hearing with no file materials, Respondent failed to supply requested documents to the panel after promising to do so.

"SCR 211 [Supreme Court Rule 211]—Respondent failed to serve his answer upon the Disciplinary Administrator after service of the complaint.

"KRPC 1.1 [(1998 Kan. Ct. R. Annot. 279)] Competence—While not alleged as a violation in the Formal Complaint, Respondent exhibited a shocking lack of competence in his handling of the representation assumed. Specifically, Respondent's lack of competence is shown at every stage of the representation, commencing with the failure to have a written fee agreement in a contingent fee matter and continuing on with Respondent's failure to pursue actions against the alleged tortfeasors and thus allow the running of the statutes of limitation, and, in addition, apparently abandoning a screening panel application. Respondent assumed a representation in which he admittedly had no experience or competence.

"KRPC 1.2 Scope of Representation—While Respondent failed to abide by the client's wishes concerning the objectives of the representation, such failure falls more appropriately under specific violations hereinafter noted.

"KRPC 1.3 Diligence—Respondent failed to act with diligence and promptness in pursuing the personal injury and wrongful death claims entrusted to him. Specifically, Respondent abandoned the requested screening panel review and failed

to answer discovery requests in the civil actions, which brought about dismissals. Respondent exhibited a total lack of diligence.

"KRPC 1.4 Communication—During Respondent's handling of the representation following his attorney wife's departure from the law partnership, there has been a failure to keep the client reasonably informed. While Respondent maintains that he regularly and frequently communicated with the decedent's elderly husband, who was employed near his Ottawa law office, he admits that his client was complainant James E. Randall, administrator of the decedent's estate. Mr. Randall estimated that he has attempted at least three times a month to find out the status of the claims, all with little success. Respondent has failed to initiate communication and has not been available for telephone or office calls.

"KRPC 1.5(c) [(1998 Kan. Ct. R. Annot. 304)] Fees—Respondent was operating under a somewhat indefinite contingent fee arrangement which was not reduced to writing as required by KRPC 1.5(c).

"KRPC 8.4 Misconduct—Respondent's lack of diligence and failure to communicate adversely reflect on Respondent's fitness to practice law.

"Further, Respondent's agreement to undertake the representation in question when he was not willing or able to actively pursue the matter also adversely reflects on his judgment and fitness to practice law. Specifically, Respondent admits that the potential damage recovery on behalf of an 89 year old person did not justify the difficult and extended litigation involved in such recovery. It is the opinion of the panel that such concern did not excuse, but contributed significantly to, Respondent's lack of diligence and failure to communicate."

## "AGGRAVATING CIRCUMSTANCES

"The panel finds the following factors in aggravation applicable to this case:

"(e) Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules and orders of the disciplinary process;

"(g) Refusal to acknowledge wrongful nature of conduct. Respondent denies the charges of lack of diligence and failure to communicate with his client. Instead, he seeks to excuse his lack of diligence because the case, which he had undertaken, was so hopeless. As to lack of communication, Respondent again makes an excuse to the effect that he was regularly talking with the client's elderly father-in-law at a nearby pharmacy/coffee shop where the latter was employed;

"(h) Vulnerability of victim—The client, James E. Randall, administrator of the decedent's estate and representative of the decedent's family, clearly did not have experience in such matters and relied completely on the judgment and advice of Respondent, which trust was not met;

"(i) Substantial experience in the practice of law. Respondent was admitted to practice in 1988 and was employed in government practice for a time. While his private practice experience was not particularly lengthy in 1995, the panel is concerned about his initial lack of judgment in accepting a difficult representation which he was not willing to zealously pursue. The panel is equally concerned that,

after 10 years of practice, the Respondent presently has no understanding of the Supreme Court Rules pertaining to Discipline of Attorneys.

"Taken together, the panel finds Respondent's experience is an aggravating factor."

## "MITIGATING CIRCUMSTANCES

"The panel finds two factors in mitigation applicable to this case:
(a) Absence of a prior disciplinary record, and
(b) Absence of a dishonest or selfish motive."

We also note that following final argument before this court, respondent, on September 17, 1999, submitted a copy of a settlement agreement and release that respondent entered into with James E. Randall, administrator of the estate of Lela Mae Barnes, deceased, and all the heirs of Lela Mae Barnes. We acknowledge receipt of the settlement and respondent's payment of $20,000 to settle the claims outstanding in the Barnes estate; we consider this as a mitigating factor in arriving at our final decision.

We also note that respondent and the Disciplinary Administrator provided additional documentation prior to oral argument before this court indicating that respondent did initiate but failed to follow through with two petitions for the wrongful death of Lela Mae Barnes filed in two different district courts in this state and a memorandum requesting medical malpractice screening panel pursuant to K.S.A. 65-4901 et seq. We consider the additional documentation but note that other than corroborating some of the testimony of respondent before the panel, the additional documentation has no impact on the violations charged against respondent. We, however, consider the additional documentation in arriving at our final conclusion.

The court, having considered the record from the final hearing report of the panel, the arguments of the parties, the additional documents furnished to the court before and after oral argument, concludes that the panel's findings of fact and conclusions of law are supported by clear and convincing evidence. This court adopts the findings and conclusions of the panel.

We particularly agree with the following observation of the panel:

"While the Respondent's violations of the charges contained in the Formal Complaint are serious, the panel is equally, and perhaps even more, concerned with Respondent's total lack of respect for the Supreme Court Rules governing procedures in disciplinary matters and his failure to comply with the orders of the panel. The panel recommends that Respondent be suspended for a period of one year and until such time. as he may satisfy the Disciplinary Administrator with regard to his understanding and appreciation of the Kansas Rules of Professional Conduct."

We adopt the panel's recommendation. with a slight modification. We agree that the appropriate sanction is suspension from the practice of law in the. State of Kansas for a period of one year. Additionally, prior to readmission to practice in this State, we conclude that respondent must demonstrate to this court that he has taken and passed the multistate professional responsibility examination administered by the National Conference of Bar Examiners with a scale score of 76 or above.

IT IS THEREFORE ORDERED that John W. Cole be suspended from the practice of law in the State of Kansas for a period of one year commencing on the date of this decision.

IT IS FURTHER ORDERED as an additional condition for readmission to practice in this State that the respondent demonstrate to this court that he has taken and passed the multistate professional responsibility examination administered by the National Conference of Bar Examiners with a scale score of 76 or above.

IT IS FURTHER ORDERED that respondent shall comply with the provisions of Supreme Court Rule 218(a) (1998 Kan. Ct. R. Annot. 246) and at the end of suspension shall comply with Supreme Court Rule 219 (1998 Kan. Ct. R. Annot. 256).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this order be published in the official Kansas Reports.