No. 83,937

In the Matter of JAMES C. TRICKEY, *Respondent*.
(999 P.2d 964)

Opinion filed March 10, 2000.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*Steven R. McConnell,* of McConnell & McMahon, of Lenexa, argued the cause, and *James C. Trickey,* respondent, appeared pro se.

*Per Curiam:* This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, James C. Trickey, alleging violations of Kansas Rules of Professional Conduct (KRPC) 1.1 (competent representation of a client) (1999 Kan. Ct. R. Annot. 284), 1.3 (reasonable diligence and promptness) (1999 Kan. Ct. R. Annot. 294), 1.4(a) (keeping the client reasonably informed) (1999 Kan. Ct. R. Annot. 303), 1.15(a) (holding property for a client) (1999 Kan. Ct. R. Annot. 342), and 8.4(d) (conduct prejudicial to the administration of justice) (1999 Kan. Ct. R. Annot. 399), and Supreme Court Rule 207 (aid in misconduct investigations) (1999 Kan. Ct. R. Annot. 223). We adopt and impose the panel recommendation of published censure.

Trickey is an attorney admitted to the practice of law in Kansas in 1983. He has practiced law in Kansas for 16 years. The facts are not in dispute.

The panel made the following findings of fact and conclusions of law:

"2. On September 25, 1995, Betty Briggs retained respondent to handle a simple bankruptcy matter. Upon retaining respondent, Ms. Briggs wrote respondent a check for $360. This was with the understanding that $160 would cover the Bankruptcy Court's filing fee, and that the remaining $200 would serve as a 'flat' fee for respondent's services. However, this fee arrangement was never reduced to writing. To complicate matters, respondent never sent Ms. Briggs a subsequent bill for services rendered. Nor did respondent ever provide Ms. Briggs an accounting of how the above-described funds had been applied.

"3.   Respondent did not deposit Ms. Briggs' $360 in a trust account. Instead, he simply held her check for a period of time. Later, respondent deposited the check into his general office account.

"4.   At the time respondent was retained by.Ms. Briggs, he did not have a law firm trust account.

"5.   After fielding some calls from Ms. Briggs' creditors, but without the benefit of filing the bankruptcy case or sending Ms. Briggs a bill for services rendered, respondent ultimately took all of the $360 as his 'fee.' He testified he believed that he was entitled to the money, given his customary hourly rate of $75 and the amount of work he claimed to have done for Ms. Briggs.

"6.   On September 25, 1995, when Ms. Briggs retained respondent, she gave him a list of her debts. Respondent told Ms. Briggs that she would have to come in at a later time to sign certain documents, and that only then would respondent file the bankruptcy case.

"7.   In October of 1995, Ms. Briggs had surgery for cancer and began radiation treatment. Between October of 1995 and May of 1996, Ms. Briggs called respondent many times. She finally spoke to respondent in May of 1996 about her new medical bills. Respondent told her that it was a 'good thing' that they had waited to file the bankruptcy, and told her that the new bills should be included in the bankruptcy filing.

"8.   On June 10, 1996, Ms. Briggs met respondent and gave him a list of new medical bills which she had prepared. This was the last time that Ms. Briggs ever heard from respondent.

"9.   At their June 10, 1996, meeting, Ms. Briggs informed respondent that she had borrowed $2,500 from Household Finance Corporation. Out of concern that this loan might be challenged in bankruptcy as a voidable preference, respondent told Ms. Briggs that it was necessary to wait an additional ninety days before filing her bankruptcy case.

"10.   On or about April 10, 1998, St. Joseph Health Center filed suit against Ms. Briggs. The hospital later obtained a judgment. This resulted in the garnishment of Ms. Briggs' wages in the aggregate amount of $632 [sic].

"11.   In early May of 1998, Ms. Briggs faxed to respondent a copy of the St. Joseph Health Center Petition, along with a cover letter. Ms. Briggs resent this letter to respondent on May 13, 1998, approximately one week after the first faxed copy was sent.

"12.   On or about July 24, 1998, and again on or about August 10, 1998, Ms. Briggs faxed letters to the respondent concerning.the garnishment by the hospital and the need to file the bankruptcy case. She also expressed her feeling that she was entitled to a full refund of her $360. But, Ms. Briggs never received any refund from respondent.

"13.   Ms. Briggs later made numerous attempts to contact respondent by telephone. She was told that respondent only came into the office during the evenings and that she could leave a message for respondent. Respondent, however, never returned any of Ms. Briggs' telephone calls.

"14. On or about August 17, 1998, Ms. Briggs retained another attorney, Bradley H. Medlin of Olathe, Kansas, to analyze her financial situation and to file a bankruptcy petition on her behalf. Retaining new counsel caused Ms. Briggs to incur an additional $600 [*sic*] in attorney's fees. As earlier indicated, the $360 Ms. Briggs had paid to respondent was never returned.

"15. Respondent converted Ms. Briggs' $360 to his own use.

"16. Respondent admits that he failed to timely file a bankruptcy petition for Ms. Briggs. Respondent also admits that Ms. Briggs was damaged as a result of the wage garnishment and the additional attorney's fees that she incurred with Mr. Medlin.

"17. Respondent admits that he failed to keep Ms. Briggs reasonably informed about the status of her bankruptcy matter, that he failed to promptly comply with her reasonable requests for information, and that there was a total lack of communication between respondent and his client.

"18. Mr. Medlin submitted his informal complaint concerning respondent to the disciplinary administrator on or about September 30, 1998.

"19. The investigation of this matter was assigned to Linda Scott Skinner, an attorney in Mission, Kansas who serves on the Johnson County Ethics and Grievance Committee. On October 21, 1998, Ms. Skinner wrote to both the complainant (Mr. Medlin) and to respondent, requesting that they call Ms. Skinner. Mr. Medlin returned Ms. Skinner's call on October 29, 1998. But, respondent failed to reply.

"20. On November 13, 1998, Ms. Skinner mailed a second request to respondent, asking that he contact her to discuss the complaint. Respondent left a message on Ms. Skinner's voice mail on November 20, 1998. Ms. Skinner returned that call to respondent's answering machine on November 23, 1998. Respondent, however, never called back. Nor did respondent ever provide a sufficiently detailed written response to the complaint. In short, respondent failed to cooperate in the investigation.

## "CONCLUSIONS OF LAW

"Based on the above-described clear and convincing evidence, the panel concludes, as a matter of law, as follows:

"1. Respondent violated KRPC 1.1, which provides: 'A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' Specifically, respondent violated this rule by not handling Ms. Briggs' case with the 'thoroughness and preparation reasonably necessary for the representation.'

"2. Respondent violated KRPC 1.3, which provides: 'A lawyer shall act with reasonable diligence and promptness in representing a client.'

"3. Respondent violated KRPC 1.4(a), which provides: 'A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.'

"4.   Respondent violated KRPC 1.15(a) which, in pertinent part, provides: 'A lawyer shall hold property of clients . . . that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.'

"5.   Respondent violated Kansas Supreme Court Rule 207(b), which provides: 'It shall be the duty of each member of the bar of this state to aid the Supreme court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Specifically, respondent violated this rule by not cooperating with or timely responding to the assigned investigator, Linda Scott Skinner.

"6.   The Disciplinary Administrator has not proven by clear and convincing evidence the allegation in the formal complaint that respondent violated KRPC 8.4(d). That rule provides that '[i]t is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.' Respondent's dilatory conduct in handling Ms. Briggs' case, and his basic lack of cooperation in Ms. Skinner's investigation of Mr. Medlin's complaint, reflects negligence and inattention. But, viewing the record as a whole, respondent's conduct does not amount to intentional wrongdoing or bad faith obstruction of the disciplinary proceedings."

Trickey does not take exception to the final hearing report findings and recommendations. The panel recommended the sanction of published censure. In adopting that recommendation, the panel explored mitigating and aggravating circumstances:

"a.   Aggravating factors:

"i. *Dishonest or selfish motive.* Although perhaps not dishonest, respondent presumably had a selfish motive in not promptly refunding the $360 to Ms. Briggs.

"ii. *Vulnerability of victim.* All bankruptcy clients are financially vulnerable. Ms. Briggs, who was seriously ill, was particularly vulnerable.

"iii. *Substantial experience in the practice of law.* Respondent had practiced for thirteen years when he was first retained by Ms. Briggs.

"iv. *Indifference to making restitution.* This is a factor, for the reasons noted above.

"b.   Mitigating factors:

"i. *Absence of a prior disciplinary record.* The disciplinary administrator admits that this is respondent's first ethical violation.

"ii. *The present and past attitude of the attorney as shown by his cooperation during the hearing and his full and free acknowledgement of the transgressions.* As earlier indicated, respondent did not timely respond to or cooperate with the investigator's inquiries. However, he cooperated at the formal complaint stage and fairly quickly stipulated to most of the alleged ethical violations."

A finding of attorney misconduct requires proof "by clear and convincing evidence." Supreme Court Rule 211(f) (1999 Kan. Ct. R. Annot. 235). The panel's findings are supported by clear and convincing evidence and are adopted as the findings of this court.

We now turn to the issue of compensating Trickey's client, Briggs. The panel recommended that Trickey make restitution in the amount of $360 plus 10% interest from September 25, 1996. At the time of oral argument we were informed that Trickey agreed to repay the $360 plus interest, but had not yet done so. The panel did not address restitution for the garnishment or additional expenses Briggs incurred as a result of Trickey's failure to file the bankruptcy petition.

In response to instructions from this court the Deputy Disciplinary Administrator filed a memorandum detailing: (1) Trickey's payment of partial restitution after oral argument and (2) the additional expenses incurred by Briggs. The memorandum states that a check for $470 representing the $360 plus interest was hand-delivered to Briggs on January 28, 2000. In addition, the Deputy Disciplinary Administrator supplied documentation that Briggs lost $458.16 in garnished wages and incurred an expense of $425 in attorney fees. Trickey must pay both those amounts to Briggs within 60 days from the date of this opinion.

IT IS THEREFORE ORDERED that the respondent, James C. Trickey, be and he is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (1999 Kan. Ct. R. Annot. 210) for his violations of the KRPC and Supreme Court Rule 207.

IT IS FURTHER ORDERED that respondent shall deliver to the Disciplinary Administrator the amount of $883.16 payable to Betty Briggs within 60 days from the date of this order.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and the costs of this action be assessed to the respondent.