272 Kan. 299 (2001)
32 P.3d 1174
In the Matter of JAMES K. CRAIG, Respondent.
No. 86,794.
Supreme Court of Kansas.
Opinion filed October 19, 2001.
Frank D. Diehl, deputy disciplinary administrator, argued the cause, and Stanton A. Hazlett, disciplinary administrator, was with him on the formal complaint for the petitioner.
G.Craig Robinson, of Wichita, argued the cause for respondent, and James K. Craig, respondent, argued the cause pro se.
Per Curiam:
This is an original uncontested proceeding in discipline filed by the Disciplinary Administrator's office against James K. Craig, of Wichita, an attorney admitted to the practice of law in Kansas.
The formal complaint filed against respondent alleges violations of KRPC 1.3 (2000 Kan. Ct. R. Annot 310), diligence and promptness; 1.4 (2000 Kan. Ct. R. Annot. 320), communication; 1.16(d) (2000 Kan. Ct. R. Annot. 371), terminating representation; 5.3 (2000 Kan. Ct. R. Annot. 404), responsibility for nonlawyer assistants; 1.5 (2000 Kan. Ct. R. Annot. 330), fees; 1.15 (2000 Kan. Ct. R. Annot. 360), safekeeping property; and 8.4(c) (2000 Kan. Ct. R. Annot. 420), misconduct; and Supreme Court Rule 207 (2000 Kan. Ct. R. Annot 237), failure to cooperate.
A hearing before a panel of the Kansas Board for Discipline of Attorneys was held on January 10, 2000, in the hearing room of the office of Disciplinary Administrator, Topeka, Kansas. Respondent appeared in person and through counsel, G. Craig Robinson. The Deputy Disciplinary Administrator dismissed the allegation in the complaint that respondent violated Supreme Court Rule 207. Respondent testified at the panel hearing and stipulated to the facts and to the violations of KRPC as set forth in the complaint. The panel found, by clear and convincing evidence, the following:
"2. In addition to being a licensed attorney, until December 31, 2000, the Respondent also was a licensed private detective. The Respondent's private detective *300 agency was also located at 1065 North Waco Street, Wichita, Kansas XXXXX-XXXX.
"3. In 1994, the Respondent purchased the `Divorce Clinic' from the widow of Richard Hilton. The Respondent's `Divorce Clinic' practice amounted to a divorce mill, handling a large volume of low-cost uncontested divorce cases. The Respondent recently sold the `Divorce Clinic' practice to James W. Wilson and Kathleen Kent. The Respondent is in the process of establishing a practice similar to the
`Divorce Clinic' but in the bankruptcy field.

Morris ComplaintDA7579
"3. On Wednesday, February 3, 1999, Robert Morris met with the Respondent's wife, Hazel Craig, Office Manager for the Respondent's law practice. At that time, Mr. Morris paid $190.00 and retained the Respondent to file an action for divorce. Mr. Morris informed Mrs. Craig that time was of the essence. Mrs. Craig assured Mr. Morris that the paperwork would be filed on the following Friday or Monday.
"4. The Respondent failed to prepare and file the necessary pleadings. Mr. Morris' wife filed a divorce action and obtained temporary orders. On February 8, 1999, Mr. Morris was served with a copy of the petition filed by his wife. Mr. Morris took the petition to the Respondent's law office, met with Mrs. Craig again, and provided a copy of the paperwork to Mrs. Craig. Mrs. Craig assured Mr. Morris that an answer would be filed within twenty days. At that time, Mr. Morris told Mrs. Craig what he wanted to receive in the divorce.
"5. Mr. Morris later contacted the Respondent's office again. Mr. Morris met with Diana Perry, who was, at the time, the Respondent's Legal Assistant, and again provided information about what he wanted to receive in the divorce.
"6. The Respondent failed to file an answer to the petition. As a result, a default judgment was entered against Mr. Morris on April 8, 1999. The journal entry awarded Mr. Morris' wife the house, all of the equity in the house, her retirement account, and other property that she had previously agreed to provide to Mr. Morris.
"7. On May 3, 1999, the Respondent finally entered his appearance in behalf of Mr. Morris. At that time, the Respondent filed an untimely answer and motion to modify the temporary orders.
"8. On May 24, 1999, Mr. Morris went to the Respondent's office to discuss the motion to modify the temporary orders. At that time, Mr. Morris learned that the divorce had been previously granted. That was the only personal contact that Mr. Morris ever had with the Respondent.
"9. Subsequently, Mr. Morris filed a complaint with the Disciplinary Administrator's office regarding the Respondent's actions. Thereafter, the Respondent acknowledged that he had failed to provide diligent representation to Mr. Morris.
"10. Later, Mr. Morris sued the Respondent. To avoid Mr. Morris' claim, the Respondent and his wife filed a bankruptcy case. Mr. Morris' claim against the Respondent was discharged in the bankruptcy case.

*301 "11. The Respondent has not refunded Mr. Morris' retainer, nor made any attempts to make Mr. Morris whole following the misconduct.

Troyer ComplaintDA7608
"12. Charles Troyer retained the Respondent in a post-divorce matter. The matter was scheduled for hearing, but later continued. The Respondent's wife incorrectly informed Mr. Troyer of the new hearing date. As a result, Mr. Troyer did not appear at the scheduled hearing.
"13. At one point, the Respondent discussed the journal entry with Mr. Troyer. Mr. Troyer objected to certain language contained in the journal entry. The Respondent failed to object to the proposed journal entry and, subsequently, the court signed the journal entry.
"14. Throughout the course of the representation, the Respondent failed to return Mr. Troyer's telephone calls.

Long ComplaintDA7669
"15. Randy Long retained the Respondent to represent him in two separate paternity actions and paid the Respondent $600 therefor. Subsequently, the Respondent failed to return Mr. Long's telephone calls.
"16. The Respondent failed to enter his appearance and failed to take any action in behalf of Mr. Long. As a result, default judgment was entered against Mr. Long. Mr. Long did not learn of the entry of default judgment until his wages were garnished.
"17. The Respondent filed a motion to set aside the journal entry, but failed to have the motion scheduled for hearing. The Respondent then filed a second motion to set aside the journal entry and scheduled that motion for hearing.
"18. Because the Respondent had not been diligent, Mr. Long terminated the Respondent and demanded that the Respondent refund the retainer. The Respondent refused to refund the retainer.
"19. To date, the Respondent has never refunded Mr. Long's retainer.

Blaine-Scogin ComplaintDA7719
"20. In August 1998, Rhonda Blain-Scogin retained the Respondent to represent her in an action for divorce. At that time, Ms. Blaine-Scogin paid the Respondent a retainer of $1,500.
"21. Ms. Blaine-Scogin asked the Respondent to obtain child support and spousal support. The Respondent failed to obtain temporary orders of support. The court ordered that child support be calculated and paid during the pendency of the divorce action. The Respondent failed to calculate the child support as ordered. As a result, over a year elapsed without Ms. Blaine-Scogin receiving court ordered financial support from her husband.
"22. Ms. Blaine-Scogin also asked the Respondent to seek an emergency divorce. Ms. Blaine-Scogin provided a doctor's letter as support for the requested emergency divorce. The Respondent failed to request that the court grant an emergency divorce.

*302 "23. At one point, Ms. Blaine-Scogin took off work for a meeting with the Respondent to prepare for the pre-trial conference. Without informing Ms. Blaine-Scogin, until she arrived at his office for the meeting, the Respondent canceled the meeting and continued her pre-trial conference hearing because he needed to go to Colorado and investigate a murder case in his capacity as a private detective.
"24. Throughout the representation of Ms. Blaine-Scogin, the Respondent failed to keep Ms. Blaine-Scogin reasonably informed of the status of her case. He repeatedly misled Ms. Blaine-Scogin regarding child support, scheduled court hearings, and the status of the case.
"25. Eventually, Ms. Blaine-Scogin hired replacement counsel. Ms. Blaine-Scogin's subsequent attorney immediately obtained an order for support and a divorce decree.

Dewey ComplaintDA7789
"26. Peggy Dewey retained the Respondent to represent Ms. Dewey's son in a pending divorce action. Ms. Dewey paid the Respondent $600 for that representation.
"27. Subsequently, Ms. Dewey's son was arrested for violating a protection from abuse order. Ms. Dewey engaged the Respondent's associate, John Myzer, to represent her son. Ms. Dewey paid the Respondent $500 for that representation. The day after the Respondent was retained, the city prosecutor dismissed the case on his own motion.
"28. Because neither the Respondent, nor his associate took any action to achieve the dismissal, Ms. Dewey requested that the $500 retained be returned to her. The Respondent refused to return the retainer, explaining that he had applied the $500 for outstanding fees associated with the divorce action. Ms. Dewey never agreed to pay any additional monies for the representation of her son in the divorce action.
"29. To date, the Respondent has not refunded the $500 to Ms. Dewey.

Trust Account ComplaintDA8023
"30. During 1999, the Respondent had three trust accounts:
"a. At Intrust Bank, the Respondent had an established trust account titled the James K. Craig, Attorney at Law, Trust Account, account number XXXXXX. During the first week of June 1999, six checks for filing fees were returned due to insufficient funds. Thereafter, on June 15, 1999, that account was closed due to excessive overdrafts. At the time that it was closed, it had a negative balance of $983.21.
"b. On May 13, 1999, Mrs. Craig opened a trust account titled James K. Craig, d/b/a The Divorce Clinic Trust Account at Southwest National Bank, account number XXX-XXX-X. On May 21, 1999, four checks for filing fees were returned due to insufficient funds.

*303 "c. On July 20, 1999, the Respondent opened a trust account titled the James K. Craig, Attorney at Law Trust Account at Commerce Bank, account number XXXXXXXXX.
"31. In the spring of 1999, the Respondent was sued by several creditors, including Southwestern Bell Telephone. Additionally, the Internal Revenue Service (hereinafter `IRS') issued a levy against the Respondent for failing to pay taxes.
"32. Southwestern Bell Telephone obtained a judgment against the Respondent and, after the Respondent failed to pay the judgment, Southwestern Bell Telephone garnished the Respondent's bank accounts, including the Respondent's trust accounts. Mrs. Craig contacted `Mona' at Southwest National Bank and informed her that trust accounts are not subject to garnishment. Thereafter, the garnishment was released. Eventually, the judgment owed to Southwestern Bell Telephone was discharged in bankruptcy.
"33. The Respondent and his wife deposited personal funds into the trust account at Southwest National Bank and, thereby, avoided their creditors and the IRS. Some of the personal and office expenses paid through the trust account are as follows:

Check No. Payee Date Amount For
 1010 Jane Austin May 28, 1999 288.00 32 hours
 1011 Hazel Craig May 28, 1999 500.00
 1014 Hazel Craig May 28, 1999 760.32
 1015 A&H Cleaning May 31, 1999 103.00 To cover
 insufficient
 funds ck
 1016 Hazel Craig June 2, 1999 100.00
 1017 A&H Cleaning June 2, 1999 122.50
 1018 Office Depot June 2, 199 80.19
 1021 DMA June 8, 1999 108.00
 1022 Michelle Kester June 8, 1999 17.00
 1023 Eye Associates June 8, 1999 65.00
 1032 Hazel Craig June 18, 1999 1000.00 Filing fees

"34. While the trust accounts were extant, the Respondent failed to maintain complete records of them.
"35. Currently, the Respondent does not utilize his trust accounts. Mrs. Craig testified that they do all business in `cash.' The Respondent requires his clients to pay him in cash and Mrs. Craig pays the filing fees in cash. Mrs. Craig testified that she keeps the cash in an envelope and that the cash includes unearned fees.
"36. Mrs. Craig testified that the IRS levy, to date, has not been satisfied."
The panel made the following conclusions of law:
"1. Attorneys must act with reasonable diligence and promptness in representing their clients. Because the Respondent failed to act with reasonable diligence *304 and promptness in representing Mr. Morris, Mr. Long, and Ms. Blaine-Scogin, the Hearing Panel concludes that the Respondent violated KRPC 1.3.
a. In the Morris matter, the Respondent failed to timely file a divorce petition, failed to timely file an answer to the petition filed by Mr. Morris' wife, and failed to take any corrective action.
b. The Respondent failed to file an answer in behalf of Mr. Long. Because of the Respondent's failure, default judgment was entered against Mr. Long, and his wages were garnished, without the benefit of a paternity test.
c. Additionally, with regard to Ms. Blaine-Scogin (DA7719), the Respondent failed to apply for and obtain an emergency divorce and failed to obtain temporary orders, including an order for child support. As a direct result of the Respondent's failure, Ms. Blaine-Scogin did not receive any child support for a period of thirteen months.
"2. KRPC 1.4(a) provides:
`A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' By failing to return telephone calls and by failing to provide accurate information regarding scheduled court hearings, the Hearing Panel concludes that the Respondent failed to keep Mr. Morris, Mr. Troyer, Mr. Long, and Ms. Blaine-Scogin reasonably informed about the status of their cases, in violation of KRPC 1.4(a).
"3. KRPC 1.15(a) provides:
`A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of representation.'
The Respondent violated KRPC 1.15(a) when he commingled his personal funds with client funds and when he failed to maintain adequate trust account records.
"4. KRPC 1.16(d) requires attorneys to `refund any advance payment of fee that has not been earned.' The Hearing Panel concludes that the Respondent violated KRPC 1.16(d) when he failed to return the unearned fee of $500 to Ms. Dewey.
"5. KRPC 5.3 provides as follows:
`With respect to a nonlawyer employed or retained by or associated with a lawyer:
`(a) a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer.
`(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

*305 `(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the rules of professional conduct if engaged in by a lawyer if:
(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or
(2) the lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.
With respect to his representation of Mr. Morris, the Respondent violated KRPC 5.3, when he failed to assure that the actions of his staff were compatible with his professional obligations as a lawyer.
"6. It is professional misconduct for a lawyer to `engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Hearing Panel concludes that the Respondent engaged in conduct involving dishonesty and fraud when he concealed personal funds from his creditors by placing the funds in his trust account."
The panel applied the ABA standards for imposing lawyer sanctions and considered ABA Standard 3 in making its recommendation as to the discipline to be imposed against the respondent.
The panel found the following aggravating factors: prior disciplinary offenses (respondent was informally admonished for having violated KRPC 1.1 and KRPC 1.3), dishonest or selfish motive (respondent acted dishonestly and selfishly), a pattern of misconduct, and substantial experience in the practice of law. The panel found several mitigating circumstances including acknowledgment of the violations, cooperation with disciplinary investigation, previous good character and reputation, cooperation during the hearing, and remorse.
In addition to the above-cited factors, the panel has thoroughly examined and considered ABA Standard 4.12. That standard provides, in pertinent part: "Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client."
The panel then concluded its recommendation as follows:
"The Hearing Panel unanimously recommends that Respondent be suspended from the practice of law in the state of Kansas for a period of one year.
....
"Mrs. Craig also testified that Mr. Morris was the only client who had a claim discharged in bankruptcy. Accordingly, the Hearing Panel recommends that the *306 Court order the Respondent to pay restitution to the following clients in the following amounts: Randy Long, $600; Rhonda Blaine-Scogin, $1,500; and Peggy Dewey, $500.
"Additionally, the Hearing Panel recommends that during the suspension period, the Respondent enroll in and successfully complete twelve hours of law office management continuing legal education. The twelve hours of law office management continuing legal education is in addition to the standard annual continuing legal education requirements and should include a segment on trust account use and management.
"It is clear to the Hearing Panel that the Respondent does not understand the requirements of KRPC 1.15. The procedure currently utilized by the Respondent and his wife in maintaining client funds is a continuing violation of KRPC 1.15 and a practice designed to continue to hide assets from their creditors, including the IRS. In order to ensure that client funds are appropriately safeguarded, the Hearing Panel recommends that the Respondent be required to undergo a reinstatement hearing. See Kan. Sup. Ct. R. 219.
"At the reinstatement hearing, the Respondent should be required to establish that he understands the requirements of KRPC 1.15. Additionally, the Respondent should also be required to establish that he has a system in place to appropriately track and account for all unearned fees. Finally, at the reinstatement hearing, the Respondent should be required to establish that he has paid full restitution and has successfully completed the twelve hours of law office management continuing legal education, as described above."
The court, having considered the record herein and the reports of the hearing panel, concurs in the findings, conclusions, and recommendation of the panel.
IT IS THEREFORE ORDERED that James K. Craig be suspended from the practice of law in the State of Kansas for a period of 1 year, effective the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2000 Kan. Ct. R. Annot. 224).
IT IS FURTHER ORDERED that in the event respondent should seek reinstatement, he shall be subject to all of the reinstatement requirements of Supreme Court Rule 219 (2000 Kan. Ct. R. Annot. 274).
IT IS FURTHER ORDERED that the respondent make the following restitution: Randy Long, $600; Rhonda Blaine-Scogin, $1,500; and Peggy Dewey, $500.
*307 IT IS FURTHER ORDERED that respondent successfully complete 12 hours of law office management continuing legal education. The 12 hours shall be in addition to the standard annual continuing legal education requirements and should include a segment on trust account use and management.
IT IS FURTHER ORDERED that respondent fully comply with Supreme Court Rule 218 (2000 Kan. Ct. R. Annot. 266), that the costs of these proceedings be assessed to the respondent, and this opinion be published in the official Kansas Reports.