No. 88,876

In the Matter of DAVID L. MATSON, *Respondent.*

(56 P.3d 160)

Opinion filed October 25, 2002.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

The respondent did not appear.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against David L. Matson, of Topeka, an attorney admitted to the practice of law in the state of Kansas. A hearing was held before a panel of the Kansas Board for Discipline of Attorneys wherein respondent appeared pro se.

The hearing panel concluded respondent had violated KRPC 1.1 (competent representation) (2001 Kan. Ct. R. Annot. 312); KRPC 1.3 (diligence) (2001 Kan. Ct. R. Annot. 323); and KRPC 1.4(a) (client communication) (2001 Kan. Ct. R. Annot. 334). The panel recommended respondent be suspended from the practice of law for 6 months.

The panel made the following findings of fact and conclusions of law:

"FINDINGS OF FACT

. . . .

"2.  The Respondent graduated from law school in May, 1999. The Respondent passed the Kansas Bar Examination in July, 1999. While the Respondent looked for employment as an attorney, he worked in various non-legal positions. In July, 2000, the Respondent entered the private practice of law. The Respondent was a solo practitioner and shared an office with another attorney.

"*Representation of Rudolpho Cervantes Rodriguez—DA8113*

"3.  In September, 2000, Rudolpho Cervantes Rodriguez retained the Respondent to represent him in a criminal case. At the time he retained the Respondent, Mr. Rodriguez paid the Respondent $2,000.00. Mr. Rodriguez was charged with one count of aggravated kidnapping (level 1 person felony), four counts of kidnapping (level 3 person felony), four counts of aggravated assault with a firearm (level 7 person felony), one count of attempted aggravated robbery

(level 5 person felony), and one count of cruelty to animals (class A misdemeanor). At the time the Respondent entered the case, Mr. Rodriguez had already been bound over for trial following a preliminary hearing. Mr. Rodriguez' case was pending before the Honorable John Anderson, III, Johnson County District Court Judge.

"4. Before entering his appearance in Mr. Rodriguez' case, the Respondent had made a few appearances, concerning minor matters, before Judge Anderson. When Judge Anderson learned that Respondent, a lawyer relatively new to the practice, had entered his appearance in Mr. Rodriguez' case, Judge Anderson became concerned that Respondent was too inexperienced to handle Mr. Rodriguez' case.

"5. Shortly after the Respondent entered his appearance in Mr. Rodriguez' case, Judge Anderson met with the Respondent to informally discuss whether the Respondent was experienced enough to handle Mr. Rodriguez' case.

"6. After this informal discussion, Judge Anderson telephoned the Disciplinary Administrator regarding the Respondent's representation of Mr. Rodriguez. Following that conversation, Judge Anderson contacted the Respondent and asked him to come see him.

"7. On November 2, 2000, the Respondent came to see Judge Anderson. At that time, Judge Anderson held an *in camera* meeting with the Respondent regarding his ability to represent Mr. Rodriguez at trial. Judge Anderson's court reporter recorded the meeting. During the meeting, Judge Anderson asked the Respondent to consider whether he was able to handle the representation. Judge Anderson suggested to the Respondent that he read KRPC 1.1 and *In re Docking*, 254 Kan. 921, 869 P.2d 237 (1994).

"8. Following the November 2, 2000, meeting, the Respondent asked several attorneys to assist him with the representation of Mr. Rodriguez. The Respondent offered to pay the other attorneys the entire fee that he received if they would assist him at trial. The Respondent was unable to find anyone willing to assist him in the case.

"9. Shortly before trial, Judge Anderson held another meeting in chambers. At that meeting, the Respondent and opposing counsel were present. Judge Anderson again asked the Respondent to consider whether he was experienced enough to represent Mr. Rodriguez.

"10. While the Respondent considered withdrawing from his representation of Mr. Rodriguez, the Respondent decided against it and proceeded to trial. Mr. Rodriguez' trial began December 10, 2000. It was the Respondent's first jury trial.

"11. At trial, the Respondent did, by his own admission, a poor job representing the interests of Mr. Rodriguez. For example, during *voir dire*, the jurors were informed that the Court expected that the case would take four days to try. At the end of *voir dire*, when asked by the Court if there was any other reason why the jurors would not be able to fairly and impartially decide the case, one juror complained that he did not know if he could sit through four days of Respondent's stumbling performance.

"12.    Also, during the cross-examination of the alleged victim, Alisha Lucero, the Respondent and the witness got into a "shouting match." Judge Anderson was forced to intercede. According to Judge Anderson, Ms. Lucero was clearly in control of the examination. Most of the questions the Respondent asked were objectionable. Finally, during the same cross-examination, the following exchange occurred:

'Q    [By the Respondent] Okay. Then what happened? What was the — I mean, was she crying at this point or was she kind of holding it together? Or was she totally cool, was she laughing?

'A    [By Alisha Lucero] Laughing? There was no joking matter about anything. Nobody was laughing.

'Q    Okay.

'A    Nobody was having fun. Guns were being waved. Rudy was talking about how he was going to kill Anthony. I don't find that funny whatsoever.

'Q    Okay. I didn't ask you if you were laughing. I was asking what was Lisa doing.

'A    Lisa was bawling.

'Q    Bawling?

'A    Crying, shaking, petrified, just trembling —

'Q    So —

'A    — has guns waving at her. Her friend is about to die. She thinks that she is going to die.

'Q    **If my hand is shaking, which my hands do shake, it is hard for me to roll up my marijuana cigarette joints.**

'A    Yes, it was. That is why a lot was falling out on the floor. She was trembling so bad she couldn't even —

"13.    Shortly after Ms. Lucero's testimony (during the second day of the trial), Mr. Rodriguez made a *pro se* motion for mistrial and informed the court that he wished to fire the Respondent. After careful consideration, Judge Anderson made the following ruling:

'[T]he representation Mr. Rodriguez has been receiving from [the Respondent] during the course of the trial falls short of the representation required to zealously and professionally represent a defendant charged with crimes of this severity level. It is my belief that Mr. Rodriguez is not receiving a fair trial as a result of this.

'Let me emphasize and say that there is absolutely no question that [the Respondent] has had the best of intentions as he has gone along. I believe that with my heart. I believe that he has had the best of intentions and he has been making every effort within his ability to try to represent Mr. Rodriguez.

'There is certainly no malice that I've seen of any kind from [the Respondent]. He has been in the face of some fairly embarrassing situations in regard to this and been quite professional with the Court and has never taken this personally, but he simply has not exhibited a skill level that would meet the minimum standards required for effective representati[on] of Mr. Rodriguez.

. . . .

'. . . I grant Mr. Rodriguez his *pro se* request for a mistrial.'

"14. At the hearing on this matter, the Respondent testified that he had naively believed that he would be able to the handle Mr. Rodriguez' case. According to the Respondent, however, at the trial he was "very nervous" and did a "poor job." The trial was a "humiliating" experience for Respondent, who clearly recognized that he took a case he was not capable of handling.

"15. Judge Anderson testified, at the hearing on this matter, about filing the complaint. Specifically, Judge Anderson said the following:

'. . . I have been lucky enough, I think, that I have never been in a posture where I had to make a complaint. I really did not want to do this, but I felt that I had to do this under the canons. And I should also say that what I really wanted to have happen as we went along in this case was for Mr. Matson to get somebody to help him learn how to practice law, because you don't learn how to practice law going to law school, you learn how to practice law with the mentoring help of other attorneys. And I think he's an intelligent young man. He is a pleasant young man. And I think this is a horrible beginning to his career. But I guess all I'm saying is that I would hope that there could be a resolution of this that would result in him being able to use the skills that he spent many years acquiring in school in some way.'

### "*Representation of Rafael Zamora*—DA8322

"16. On February 16, 2001, Rafael Zamora hired the Respondent to represent him in a post-divorce modification of child support and maintenance. At that time, Mr. Zamora paid the Respondent $520.00.

"17. On March 1, 2001, the Respondent informed Mr. Zamora that a hearing on the motion for modification of child support and maintenance was scheduled for April 19, 2001, at 9:30 a.m.

"18. Mr. Zamora and his friend, Rebecca Thibodeaux, placed numerous telephone calls to the Respondent, beginning shortly after retaining the Respondent and continuing through April 18, 2001. Even though Mr. Zamora and Ms. Thibodeaux had Respondent's office, home, and cell phone numbers, they were unable to reach the Respondent on most of the occasions. Additionally, the Respondent failed to return most of the telephone calls to Mr. Zamora and Ms. Thibodeaux.

"19. On April 19, 2001, at approximately 8:30 a.m., the Respondent called Ms. Thibodeaux and advised Ms. Thibodeaux that he had failed to file the necessary documents to proceed with the hearing.

"20. On May 1, 2001, the Respondent informed Mr. Zamora that a hearing on the motion for modification of child support and maintenance had been scheduled for June 21, 2001, at 10:30 a.m. On June 13, 2001, Ms. Thibodeaux called the Johnson County District Court and learned that the hearing was being continued. The Respondent later advised Ms. Thibodeaux that the continuance was

requested by opposing counsel, who had a conflicting appointment. The Respondent had agreed to the continuance without first consulting Mr. Zamora.

"21.  On June 13, 2001, the Respondent returned a call from Ms. Thibodeaux and left a message indicating that he would come by Mr. Zamora's residence and refund the $520.00.

"22.  On June 20, 2001, Mr. Zamora received a check for $500.00 from the Respondent. Thereafter, on June 25, 2001, Mr. Zamora terminated the Respondent's employment and asked that the Respondent return his client file. Two weeks later, the Respondent forwarded Mr. Zamora' s client file to Mr. Zamora's new attorney.

"23.  The Respondent testified that he was negligent in his representation of Mr. Zamora.

"24.  The Respondent informed the Hearing Panel that he is currently under an administrative suspension for failure to comply with the annual requirements to maintain his license to practice. The Respondent also testified that he is currently taking medication for depression and is undergoing therapy. The Respondent believes that, currently, he is mentally unable to practice law.

## "CONCLUSIONS OF LAW

"Based upon the above findings of fact, the Hearing Panel makes the following conclusions of law:

"1.  Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' *Id.* The Respondent lacked the requisite skill to competently represent Mr. Rodriguez at trial. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"2.  Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. In this case, the Respondent failed to provide diligent representation to Mr. Zamora when he failed to timely file and prosecute a motion for modification of child support and maintenance. Because the Respondent failed to act with reasonable diligence and promptness in representing Mr. Zamora, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"3.  KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' *Id.* The Respondent failed to keep Mr. Zamora informed regarding the status of his case. Additionally, the Respondent failed to return numerous telephone calls to Mr. Zamora and Ms. Thibodeaux. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"4.  The Disciplinary Administrator alleged in the Formal Complaint that the Respondent also violated KRPC 1.15(b), KRPC 3.3, and KRPC 8.4(g). The Panel finds that the evidence does not support findings that the Respondent violated KRPC 1.15(b), KRPC 3.3, and KRPC 8.4(g). Therefore, the allegations in the

Formal Complaint that the Respondent violated KRPC 1.15(b), KRPC 3.3, and KRPC 8.4(g), are dismissed.

### "RECOMMENDATION

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter "Standards"). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his clients to provide competent and diligent representation and reasonable communication.

"*Mental State.* The Respondent testified that he has been diagnosed with severe depression and attention deficit disorder. Additionally, the Respondent testified that he is currently taking two prescription medications to treat these conditions. Based upon the Respondent's testimony, the Hearing Panel concludes that the Respondent is currently suffering from ongoing personal or emotional problems. The Hearing Panel further believes that Respondent's mental health may have adversely impacted the Respondent's ability to represent these clients more than he realized.

"*Injury.* As a result of the Respondent's misconduct, his clients suffered injury; however, Mr. Rodriguez received a new trial and Mr. Zamora has retained other counsel.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.3, and KRPC 1.4. As such, the Respondent committed multiple offenses.

"Failed to Comply with Rules or Orders of the Disciplinary Process. In this case, the Respondent failed to file an answer.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Personal or Emotional Problems. As noted previously, the Respondent testified that he has been diagnosed with severe depression and attention deficit disorder and that he is currently taking two prescription medications to treat these conditions. Additionally, the Respondent testified that, at present, these conditions have left him unable to practice law.

"Inexperience in the Practice of Law. The Respondent was admitted to the practice of law in the state of Kansas in 1999. At the time of the violations, the

Respondent was inexperienced in the practice of law, in that, he had been actively practicing law for less than a year.

"Remorse. Clearly, at the hearing on this matter, the Respondent expressed genuine remorse for engaging in the misconduct.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 4.42 and Standard 4.52.

"Suspension is generally appropriate when:

'(a)   a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

'(b)   a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' Standard 4.42.

'Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client.' Standard 4.52.

"Based upon the above findings of fact, conclusions of law, aggravating and mitigating circumstances, and standards, the Hearing Panel unanimously recommends that Respondent be suspended from the practice of law in the state of Kansas for a period of six months. The Hearing Panel also recommends that the Respondent be required to undergo a reinstatement hearing, pursuant to Kan. Sup. Ct. R. 219. At the reinstatement hearing, the Respondent should be required to establish that he has received the appropriate professional help to enable him to prevent a repeat of the misconduct present in this case."

A. J. Focht, a member of the hearing panel, filed the following concurring opinion.

### "CONCURRING OPINION

"I write to express my personal opinion in this matter. While I concur in the Findings of Fact, Conclusions of Law and the Recommendations, I join the latter for a very narrow reason. I would not have voted for suspension had it not been for the fact that the Respondent volunteered under oath that he was not presently mentally competent to practice law and was not presently doing so. Absent that testimony my recommendation to my fellow Hearing Panel members would have been for censure.

"This judicial admission put the Hearing Panel in the position that a recommendation to suspension was necessary to carry out the function of both protection of the public and service to the Respondent.

"Without the admission of mental incompetency I would have argued that it is important to the legal community and to the public that there be, so far as possible, a sense of consistency in the sanctions meted out for violations of the Kansas Rules of Professional Conduct. The only way one can seek to bring consistency is to weigh the facts of an individual case on the scale of public opinions by the Kansas Supreme Court in similar cases. No two cases are identical.

"When I consider the conduct of the Respondent, without an attempt to minimize it, I believe he got in over his head in a criminal case that he was not ready for and did not properly handle and he failed to file an appropriate motion in a domestic situation. Other than that, the factors in favor of mitigation would lead me to believe that on the following scales censure was appropriate for the found violations of KRPC 1.2, 1.3 and 1.4(a).

"I would not find that the Respondent's conduct and the applicable factors for and against sanctions were as serious as those in these cases wherein suspension was ordered. *In re Johnson*, 272 Kan. 284, 32 P.3d 1132; *In re Craig*, 272 Kan. 299, 32 P.3d 1174; *In re Rishel*, 271 Kan. 644, 23 P.3d 820; *In re Farrell*, 271 Kan. 291, 21 P.3d 552; *In re Zimmerman*, 270 Kan. 855, 19 P.3d 160; *In re Cole*, 268 Kan. 171, 991 P.2d 422.

"Neither do I believe his misconduct was as serious as that spelled out in the following cases where probation was granted. *In re Zimmerman*, 270 Kan. 855, 19 P.3d 160; *In re Kellogg*, 269 Kan. 143, 4 P.3d 594; *In re Howard*, 269 Kan. 414, 2 P.3d 766.

"While not identical I would more closely identify the Respondent's misconduct with that in the following cases where censure was appropriate. *In re Boaten*, 22 P.3d 1034; *In re Trickey*, 268 Kan. 835, 999 P.2d 964.

"I reiterate, I join in the recommendations out of a desire to see that before the Respondent again, if ever, practices law, he is mentally capable of doing so. This, by his own admission, is a sick young man, who is not capable of representing others (nor himself, as was obvious during his hearing). His failure to follow the rules pertaining to registration and continuing legal education led him into suspension. Judge Anderson's comments in an obvious attempt to sway the Hearing Panel to leniency leads me, in part, to this concurrence with reluctance."

## DISCUSSION

Respondent failed to file exceptions to the hearing panel's report. Accordingly, pursuant to Supreme Court Rule 212(d) (2001 Kan. Ct. R. Annot. 263), the panel's findings of fact are deemed admitted. These findings abundantly support the panel's conclusions of law, which we adopt. Clearly, respondent was negligent in handling the Zamora domestic case as determined by the panel. It is obvious that respondent lacked the skills and experience necessary to represent Rodriguez in a jury trial, especially involving such a major crime as aggravated kidnapping.

We agree with the concurring opinion that these violations, although serious, would not normally be deemed to warrant a suspension from the practice of law. However, respondent testified at the hearing before the panel that he was suffering from severe

depression and attention deficit disorder, was under medication, and was seeing a psychiatrist. Respondent did not indicate that his efforts at treatment were improving his condition. In fact, he testified his medications had been increased. The hearing was held on February 26, 2002. As respondent did not see fit to appear before us, we have no information as to any changes in his condition since the panel hearing date. Respondent's mental incompetence to practice law mandates that the discipline imposed on respondent be suspension from the practice of law. We are aware that respondent has been suspended from the practice of law since September 10, 2001, pursuant to Supreme Court Rule 208 (2001 Kan. Ct. R. Annot. 254) and Supreme Court Rule 806 (2001 Kan. Ct. R. Annot. 561).

However, reinstatement from this type of suspension is routine upon payment of fees, penalties, and proof of compliance with Continuing Legal Education requirements. In respondent's situation, protection of the public requires that respondent's mental competence to practice law and other basic qualifications be established before reinstatement. The appropriate method to insure respondent's fitness to practice law is to require that respondent successfully complete the requirements of Supreme Court Rule 219 (2001 Kan. Ct. R. Annot. 285) before reinstatement.

We accept the panel's recommended discipline and suspend respondent from the practice of law in the State of Kansas for a period of 6 months commencing on the date of this opinion.

IT IS THEREFORE ORDERED that respondent David L. Matson be suspended from the practice of law in the State of Kansas for a period of 6 months commencing on the date of this opinion.

IT IS FURTHER ORDERED that any reinstatement shall be subject to Supreme Court Rule 219.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that respondent pay the costs of these proceedings.

LARSON, S.J., assigned.